## February Term, 1799.

### LUCY, a Negro woman, *v.* REASIN PUMFREY.

*LUCY* brought a writ *de homine replegiando* againſt the defendant, who held her as a ſlave. It was admitted, that on or before 1ſt *March*, 1780, and between that, and on and after 1ſt *January*, 1786, *Reasin Pumfrey* was an inhabitant of that part of the county of *Westmoreland*, which, in 1781, was erected into the county of *Waſhington*, of this ſtate; and, during the whole of that time, held *Lucy* with him, as a ſlave; and ſince that time, and till the ſuing out of this writ, has held her, as a ſlave, in *Virginia*; and that, after 13th *April*, 1782, and before 1ſt *January*, 1783, *Reasin Pumfrey* regiſtered, with the clerk of the ſeſſions of *Waſhington* county, the following *Negro* ſlaves, to wit, *Rachel*, a female, aged 28 years; *Ruth*, a female, aged 13 years; *Ben*, a male, aged 10 years; *Dinah*, a female, aged 8 years; *Lot*, a male, aged 4 years; and *Kate*, a female, aged 6 months.

*Simonſon*, for the defendant, offered parole teſtimony, that, at the time of the regiſtration, *Pumfrey* had but ſix ſlaves; that among them was *Lucy* the plaintiff; that ſhe is the ſlave regiſtered by the name of *Ruth*; and that ſhe was never known by the name of *Ruth*.

*Campbell*, for the plaintiff, objected to the admiſſion of this teſtimony. It would defeat the purpoſes of identifying, by the regiſtry, thoſe ſlaves, who, after 1ſt *November*, 1780, or 1ſt *January*, 1783, ſhould be held as ſlaves; and would reduce the whole ſyſtem to the evaneſcent, precarious, and deluſive teſt of parole evidence; the memory or faith of witneſſes to diſtant tranſactions. It would be to admit preſumption in favour of ſlavery, and againſt freedom and the record. The preſumption ought to be otherwiſe, that, the name of the plaintiff not appearing on the record, ſhe has never been recorded, and is, therefore, free.

*Simonſon.* I admit that this act ought to be conſtrued liberally in favour of freedom, and ſtrictly againſt pro-

1799.

perty. But it muſt be ſo conſtrued, as to effect the intention of the legiſlature, and produce the leaſt miſchief. It is ſufficient, if we can eſtabliſh, that the plaintiff was, at the time mentioned by the law, and yet is, the ſlave of *Reaſin Pumfrey*, and the ſame perſon regiſtered by the name *Ruth*. The deſcription of *Ruth*, as to age, ſex, and colour correſponds with the ſex, colour, and age at that time of *Lucy*.

PRESIDENT. The queſtion may be of conſiderable importance, and deſerve further diſcuſſion ; I hope, therefore, the party againſt whom our opinion is will put it in a way of being examined on a writ of Error. And I am glad, for this reaſon, that our opinion happens to be againſt the party beſt able to do this.

We do not admit the teſtimony. It would reduce that certainty of a regiſtry, intended by the law, to a ſtate of abſolute uncertainty. An error in the chriſtian name is eſſential, unleſs corrected by another deſcription annexed, as wife, biſhop, earl, &c. Fraud and perjury would be let in, to defeat the purpoſes of the law, and make ſlaves of *Negroes* really free. The fault lies with the maſter; and he muſt bear the conſequences.

*Simonſon* tendered a bill of exceptions.

There was a verdict for the plaintiff.